**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 19-10957

United States Court of Appeals
Fifth Circuit

**FILED**

April 10, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

JOSE ISMAEL MARTINEZ-OVALLE,

Defendant–Appellant,

Appeal from the United States District Court
for the Northern District of Texas

Before DENNIS, GRAVES, and WILLETT, Circuit Judges.

DON R. WILLETT, Circuit Judge:

In this sentencing appeal, Jose Ismael Martinez-Ovalle contends that the district court violated the Ex Post Facto Clause by sentencing him under the 2018 Sentencing Guidelines (those in effect when he was sentenced) rather than under the more lenient 2016 Guidelines (those in effect when he committed his crime). We agree, vacate the district court's sentencing order, and remand for resentencing.

I

In 2009, Martinez-Ovalle, who was in the country illegally, was convicted of two Texas felonies, sentenced to probation, and deported. He reentered the United States at an unknown time. In 2015, Martinez-Ovalle was taken into custody and deported again, but not before a Texas court revoked his prior

probation and imposed a two-year prison sentence instead. Nevertheless, he persisted. In 2016, Martinez-Ovalle illegally reentered the United States yet again. And yet again, he was arrested on Texas state charges.[1] This time, though, Immigration and Customs Enforcement officials took Martinez-Ovalle into custody from the state jail, and he pleaded guilty to illegal reentry after removal.[2]

The probation officer who prepared Martinez-Ovalle's presentence report determined that Martinez-Ovalle's crime concluded in 2018, when the 2016 Sentencing Guidelines were still effective. But she applied the stricter 2018 Guidelines, dismissing any ex post facto concerns. Under the 2018 Guidelines, Martinez-Ovalle received a total offense level of 17, including an eight-level § 2L1.2(b)(2)(B) increase, and a sentencing range of 30–37 months' imprisonment.[3]

Martinez-Ovalle objected, arguing that the Ex Post Facto Clause bars retroactive application of any post-offense Guidelines amendment that yields a stiffer sentence.[4] Martinez-Ovalle maintained that the sentencing judge was required to apply the 2016 Guidelines. At issue was the § 2L1.2(b)(2) enhancement.

Under the 2018 Guidelines, Martinez-Ovalle received an eight-level § 2L1.2(b)(2)(B) enhancement because he received a two-year Texas sentence

---

[1] Martinez-Ovalle was sentenced to 45 days in a Texas jail.

[2] 8 U.S.C. § 1326(a). Martinez-Ovalle didn't have a plea agreement.

[3] USSG § 2L1.2(b)(2)(B) (2018) ("If, before the defendant was ordered deported . . . from the United States for the first time, the defendant engaged in [] conduct that, at any time, resulted in . . . a conviction for a felony offense . . . for which the sentence imposed was two years or more, increase by 8 levels.").

[4] Martinez-Ovalle also raised other objections not pursued on appeal.

for conduct that occurred prior to his first removal.[5] But under the 2016 Guidelines, Martinez-Ovalle would have avoided this § 2L1.2(b)(2)(B) enhancement because, prior to his first removal, his probation had not been revoked, and he had not received a prison sentence.[6] Instead, he would have only received a four-level § 2L1.2(b)(2)(D) enhancement due to his original Texas felony convictions.[7] And if the 2016 four-level enhancement was applied instead of the 2018 eight-level enhancement, Martinez-Ovalle's minimum guideline sentence would have been 12 months lower.[8]

The sentencing court overruled Martinez-Ovalle's objection and adopted the PSR. But then, after considering the "equity" of Martinez-Ovalle's ex post

---

[5] USSG § 2L1.2(b)(2)(B) (2018).

[6] At the time, the Fifth Circuit interpreted the USSG § 2L1.2(b)(2)(B) (2016) to apply only if the probation was revoked, and the sentence imposed, *prior* to first removal. *United States v. Franco-Galvan*, 864 F.3d 338 (5th Cir. 2017). The 2018 Guidelines included Amendment 809, which changed § 2L1.2(b)'s text and application notes to specifically nullify *Franco-Galvan*. USSG § 2L1.2(b)(2) (2018); USSG Supp. App'x C, Amendment 809 ("[T]he length of a sentence imposed for purposes of §2L1.2(b)(2) and (b)(3) should include any additional term of imprisonment imposed upon revocation of probation, suspended sentence, or supervised release, *regardless of whether the revocation occurred before or after the defendant's first (or any subsequent) order of removal*." (emphasis added)).

[7] USSG § 2L1.2(b)(2)(D) (2016) ("If, before the defendant was ordered deported or ordered removed from the United States for the first time, the defendant sustained . . . a conviction for any other felony offense. . . increase by 4 levels.").

[8] Here's an overview of the sentencing math. Martinez-Ovalle's total offense level was 17. This was based on a base offense level of 8, an 8-level increase based on USSG § 2L1.2(b)(2)(B), a 4-level increase based on USSG § 2L1.2(b)(3)(D), and a 3-level decrease based on USSG § 3E1.1(a)–(b). Martinez-Ovalle had a criminal history category of III. A total offense level of 17 and a criminal history category of III correspond to a sentencing range of 30–37 months. USSG, Ch. 5, pt. A (2018) (sentencing table). The 8-level increase based on § 2L1.2(b)(2)(B) is the subject of this appeal. If instead of this 8-level increase, a 4-level increase were applied under § 2L1.2(b)(2)(D)—as Martinez-Ovalle argues should have happened— then Martinez-Ovalle's total offense level would be 13. A total offense level of 13 and a criminal history category of III correspond to a sentencing range of 18–24 months. USSG, Ch. 5, pt. A (2018). The 2018 Guidelines increased Martinez-Ovalle's minimum guideline sentence by 12 months when compared to the 2016 Guidelines' minimum guideline sentence.

facto argument, the judge "slightly var[ied]" from the 30–37 month range and sentenced Martinez-Ovalle to 23 months' imprisonment.[9]

## II

On appeal, Martinez-Ovalle re-urges that the Ex Post Facto Clause required the sentencing court to apply the 2016 Guidelines to his 2018 offense. An ex post facto violation occurs when "a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense."[10] Resolving Martinez-Ovalle's ex post facto claim requires interpreting the Guidelines, and we review the district court's interpretation and application of the Guidelines de novo.[11]

A district court usually applies the Guidelines "effective at the time of sentencing."[12] But when this generates a "harsher penalty" than applying the Guidelines effective at the time of the crime, the Ex Post Facto Clause obligates the district court to apply the older, more lenient Guidelines.[13] And since the 2018 Guidelines increased Martinez-Ovalle's minimum guideline sentence by

---

[9] The judge actually sentenced Martinez-Ovalle to 24 months but reduced his "final sentence" by one month for time Martinez-Ovalle had already spent in custody.

[10] *Peugh v. United States*, 569 U.S. 530, 533 (2013).

[11] *United States v. Godoy*, 890 F.3d 531, 535–36 (5th Cir. 2018), *as revised* (June 25, 2018).

[12] *United States v. Myers*, 772 F.3d 213, 218 (5th Cir. 2014) (internal quotation marks and citation omitted).

[13] *Id.* at 219 (internal quotation marks and citation omitted); *Peugh*, 569 U.S. at 544; U.S. Const. art I, § 9, cl. 3 ("No . . . ex post facto Law shall be passed."); *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798) (holding that ex post facto laws include "[e]very law that . . . inflicts a greater punishment[] than the law annexed to the crime[] when committed."); *see, e.g.*, *Godoy*, 890 F.3d at 533 (finding no ex post facto violation when the defendant's "total offense level [was] identical under both the 2015 and 2016 Guidelines").

12 months compared to the 2016 Guidelines' minimum guideline sentence, we side with Martinez-Ovalle.[14]

The Government urges us to adopt the Sixth Circuit's approach in *Huff v. United States*: retroactively applying "clarifying" amendments doesn't violate the Ex Post Facto Clause because that doesn't increase the defendant's sentence, it only "further expla[ins] the Guidelines range that always was applicable to a defendant."[15] As we are bound by precedent—both ours and, more importantly, the Supreme Court's—we decline.[16]

In *Huff*, the defendant completed his crime when the 2002 Guidelines applied but was sentenced after the 2007 Guidelines took effect.[17] Applying the 2007 Guidelines, the district court included an enhancement not available under the 2002 Guidelines.[18] As a result, Huff's sentencing range increased from "53 to 71 months to 70 to 87 months."[19] Huff cried constitutional foul under the Supreme Court's *Peugh* decision, which held that an ex post violation

---

[14] *Peugh*, 569 U.S. at 545, 550 (finding an ex post facto violation when the defendant's minimum guideline sentence, under new Guidelines, increased by 40 months compared to the Guidelines effective when the crime was committed).

[15] 734 F.3d 600, 608–09 (6th Cir. 2013).

[16] The Sixth Circuit takes a different tack, demarcating an analytical line not recognized by the Supreme Court or any other circuit. *Compare id.* (distinguishing between permissible clarifying amendment and impermissible substantive amendments) *with United States v. Kiekow*, 872 F.3d 236, 248 (5th Cir. 2017) ("The [*Peugh*] decision . . . establishes that where the wrong Guidelines are consulted and those Guidelines expose a defendant to greater punishment, the district court violates the Ex Post Facto Clause.") *and Godoy*, 890 F.3d at 541 ("Godoy's total offense level under the 2015 Guidelines is the same as under the 2016 Guidelines, making the district court's use of the 2016 Guidelines trouble-free under the Ex Post Facto Clause."). *But see United States v. Adams*, 545 F. App'x 659, 661 (9th Cir. 2013) ("Separately, 'there can be no ex post facto problem if an amendment to the Guidelines merely clarifies its existing substance as opposed to changing its substance.'" (citing *United States v. Johns*, 5 F.3d 1267, 1269 (9th Cir .1993)).

[17] *Huff*, 734 F.3d at 603.

[18] *Id.*

[19] *Id*. at 609.

occurs when "a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense."[20]

The Sixth Circuit agreed,[21] but not before drawing a distinction that no other circuit has drawn.[22] It stated that, under *Peugh*, "clarifying amendments may be applied retroactively" because this application doesn't "increase . . . the Guidelines range applicable to a defendant"—it just *clarifies* "the Guidelines range that always was applicable."[23] The Sixth Circuit reasoned that *Peugh* created a two-step inquiry: (1) did the applied Guidelines retroactively increase the defendant's punishment such that the relevant amendment was impermissibly substantive, or (2) did the applied Guidelines, as modified by the amendment, permissibly "clarif[y] what the Commission deems the guidelines to have already meant"?[24] We respectfully disagree and decline to adopt this two-step inquiry as we believe it is inconsistent with *Peugh* and with our (and other circuits') post-*Peugh* precedent.[25]

---

[20] *Peugh*, 569 U.S. at 533.

[21] *Huff*, 734 F.3d at 609.

[22] *See infra* note 32.

[23] *Huff*, 734 F.3d at 608–09 (citation omitted). The Sixth Circuit relied primarily on its own precedent for this assertion, assuming that it was consistent with *Peugh*. *Id.* at 608 (citing *United States v. Geerken*, 506 F.3d 461, 465 (6th Cir.2007). It also derivatively relied on a pre-*Peugh* Seventh Circuit case, *United States v. Hartz*, 296 F.3d 595, 599 (7th Cir.2002). *Huff*, 734 F.3d at 609. However, post-*Peugh*, the Seventh Circuit hasn't linked arms with the Sixth Circuit and instead adopts our (and every other circuits') view. *United States v. Rabiu*, 721 F.3d 467, 471 (7th Cir. 2013); *see infra* note 32.

[24] *Huff*, 734 F.3d at 608–09.

[25] The *Huff* court's test to determine whether an amendment was substantive or clarifying—"(1) how the Sentencing Commission characterized the amendment; (2) whether the amendment changes the language of the guideline itself or changes only the commentary for the guideline; and (3) whether the amendment resolves an ambiguity in the original wording of the guideline"—incorporates considerations beyond those embraced by the

In *Peugh*, the 1998 Guidelines applied when the defendant committed his crime, and the 2009 Guidelines applied when he was sentenced.[26] Applying the 2009 Guidelines, the district court's minimum guideline sentence was 40 months longer than it would have been under the 1998 Guidelines.[27] Peugh was sentenced to 70 months, and the Seventh Circuit affirmed.[28] On appeal, the Supreme Court found "[s]uch a retrospective increase in the measure of punishment raises clear *ex post facto* concerns."[29] It reversed, announcing "a rule that retrospective application of a higher Guidelines range violates the *Ex Post Facto* Clause."[30]

Our circuit has faithfully applied *Peugh*. For example, in *Urbina-Fuentes* we stated, "[i]t is settled that the Ex Post Facto Clause is violated when a sentencing court uses a Guidelines edition generating a higher sentencing range than the range of the edition in effect on the date of the defendant's criminal conduct."[31] That's the boiled-down inquiry—short, sweet, simple.[32]

---

Supreme Court or our sister circuits post-*Peugh*. *Id.* at 609 (internal quotation marks and citation omitted); *Peugh*, 569 U.S. at 533–34 (considering only whether an amendment increased the measure of punishment applicable to a defendant when determining if applying that amendment violated the Ex Post Facto clause).

[26] *Peugh*, 569 U.S. at 533–34.

[27] *Id.* at 545 ("When Peugh committed his crime, the recommended sentence was 30 to 37 months. When he was sentenced, it was 70 to 87 months.").

[28] *Id.* at 530.

[29] *Id.* at 545.

[30] *Id.* at 549–50 (reasoning that applying the amended Guidelines increased "the measure of punishment by altering the substantive 'formula' used to calculate the applicable sentencing range . . . creat[ing] a 'significant risk' of a higher sentence for Peugh, . . . and offend[ing]" the Ex Post Facto Clause (citations omitted)). *Peugh*'s major debate was whether the Sentencing Guidelines were too "advisory" to implicate the Ex Post Facto Clause; a controversy irrelevant to the discrete issue here. *Id.* at 552 (Thomas, J. dissenting).

[31] 900 F.3d 687, 692 (5th Cir. 2018) (citing *Peugh*, 569 U.S. at 544).

[32] Our sister circuits, Sixth Circuit excluded, unflinchingly agree. *United States v. Mehanna*, 735 F.3d 32, 68 (1st Cir. 2013); *United States v. Guerrero*, 910 F.3d 72, 75 (2d Cir. 2018); *United States v. Thompson*, 825 F.3d 198, 206 (3d Cir. 2016); *Whiteside v. United*

Turning to Martinez-Ovalle's sentence, the district court's application of the 2018 Guidelines violated the Ex Post Facto Clause.[33] Under the 2016 Guidelines, those in effect when Martinez-Ovalle's crime concluded, his sentencing range would have been 18–24 months. Under the 2018 Guidelines, his sentencing range jumped to 30–37 months. Because Martinez-Ovalle was "ultimately sentenced" under the 2018 sentencing range, the "disparity" between the 2016 Guidelines range and the 2018 Guidelines range "means that [he] was sentenced in violation of the Ex Post Facto Clause."[34]

*States*, 748 F.3d 541, 550 (4th Cir. 2014), *overruled on other grounds*, 775 F.3d 180 (4th Cir. 2014); *Rabiu*, 721 F.3d at 470; *United States v. Roberts*, 747 F.3d 990, 991 (8th Cir. 2014); *United States v. Waters*, 771 F.3d 679, 680 (9th Cir. 2014); *United States v. Kurtz*, 819 F.3d 1230, 1235 (10th Cir. 2016); *United States v. Elbeblawy*, 899 F.3d 925, 939 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 1322 (2019); *United States v. Head*, 817 F.3d 354, 358–60 (D.C. Cir. 2016).

[33] *Cf. Urbina-Fuentes*, 900 F.3d at 696. As the Eighth Circuit notes, the district court could have applied the Guidelines effective when Martinez-Ovalle committed his crime and then "*considered* the current Guidelines in determining the final sentence." *Roberts*, 747 F.3d at 991–92 (citing *Peugh*, 569 U.S. at 549 ("[S]entencing courts [are] free to give careful consideration to the current version of the Guidelines . . . . The newer Guidelines [will be] one of many reasons a district court might give for *deviating* from the older Guidelines . . . .")). Although this is instructive for future cases, it doesn't apply here as the district court did the unconstitutional inverse—applying the 2018 Guidelines while considering the 2016 Guidelines.

[34] *Urbina-Fuentes*, 900 F.3d at 696. The Government briefly argues that any error in Martinez-Ovalle's sentence was harmless. An "*ex post facto* error may be harmless" when "the record makes clear that the District Court would have imposed the same sentence under the older, more lenient Guidelines that it imposed under the newer, more punitive ones." *Peugh*, 569 U.S. at 550 n. 8. During sentencing, the judge stated he would consider the "equity of the [ex post facto] issue" and "selected [23] months because that is the term of imprisonment . . . appropriate without regard to the [ex post facto] issue . . . [or the] Motion for Downward Departure or Variance." Because these statements are open to multiple interpretations and don't "clear[ly]" show the judge would have imposed the 23-month sentence regardless of which Guidelines applied, we cannot deem the error harmless. *Peugh*, 569 U.S. at 550 n. 8; *cf. United States v. Arojojoye*, 753 F.3d 729, 737 (7th Cir. 2014) (finding harmless error under the following: "The sentence that I impose is . . . the appropriate sentence in this case regardless of whether the guideline range is that being argued by the government or that being argued by the defense").

III

For these reasons, we VACATE the district court's sentencing order and REMAND for resentencing in accordance with this opinion.